## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| FREDRICK GOINGS, M36022 | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 16−cv−0489−SMY |
| | ) | |
| JOHN BALDWIN, | ) | |
| DONALD STOLWORTHY, | ) | |
| KIM BUTLER, | ) | |
| BENEFIELD, | ) | |
| BIG E, | ) | |
| BENNETTE, | ) | |
| GALIOTO, | ) | |
| ANDREW W. SPILLER, | ) | |
| CHARLOTTE MIGET, | ) | |
| JOSH SCHOENBECK, | ) | |
| TRACY K. LEE, | ) | |
| JEANETTE C. HECHT, | ) | |
| MICHAEL HOF, | ) | |
| AARON RUNGE, | ) | |
| ERIN CARTER, | ) | |
| ANDREW DILLINGHAM, | ) | |
| LANCE PHELPS, | ) | |
| BRANDON M. ANTHONY, and | ) | |
| UNKNOWN PARTY | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Frederick Goings, an inmate in Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983, alleging numerous federal and state claims.

This case is now before the Court for a preliminary review of the Complaint pursuant to

28 U.S.C. § 1915A, which provides:

> (a) **Screening.**– The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal.**– On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
>> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact."

*Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  An action fails to state a claim upon which relief

can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its

face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Conversely, a complaint is

plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009).  Although the Court is obligated to accept factual allegations as true,

*see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so

sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim.  *Brooks v.*

*Ross*, 578 F.3d 574, 581 (7th Cir. 2009).  Additionally, Courts "should not accept as adequate

abstract recitations of the elements of a cause of action or conclusory legal statements."  *Id*.  At

the same time, however, the factual allegations of a pro se complaint are to be liberally

construed.  *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Complaint

On October 28, 2014 at approximately 11:10 am, Correctional Officer Benefield, the acting cell-house sergeant, walked through Plaintiff's gallery shouting that his paperwork had been shredded. (Doc. 1, p. 3). Benefield stated that "he better not find out who's been fucking with his shit because if he did he would come back and tear up their cell and burn their fucking house down." (Doc. 1, p. 3). Benefield then proceeded to shakedown Plaintiff's cell. (Doc. 1, p. 3). When Plaintiff returned to his cell, he noticed that his legal files had been ransacked and some of the documents destroyed. (Doc. 1, p. 4). Additionally, some of his family contact information was missing. (Doc. 1, p. 4). Plaintiff then asked Benefield why his cell was shaken down and Benefield responded by threatening Plaintiff and hurling verbal abuse at him at his cell door. (Doc. 1, p. 4). Benefield told Plaintiff "let's see how you like your next fucking cell assignment." (Doc. 1, p. 4). Benefield sent Plaintiff to segregation a few days later, allegedly as part of a scheme to have Plaintiff seriously injured or killed. (Doc. 1, p. 5).

Plaintiff's cell mate in segregation was David Sesson. (Doc. 1, p. 6). Plaintiff alleges that Benefield, Butler and various unnamed other staff knew that Sesson had threatened to kill his next cell mate if he was double-celled. (Doc. 1, p. 6). Sesson began strangling Plaintiff with an extension cord on November 5, 2014.[1] (Doc. 1, p. 6). Sesson also bit Plaintiff's fingers.

_____

[1] Plaintiff's exhibits suggest it was November 7, 2014.

(Doc. 1, p. 6).  Another inmate intervened to save Plaintiff.  (Doc. 1, p. 6).  As Sesson strangled Plaintiff, he told him "I told them not to put anyone in this cell with me."  (Doc. 1, p. 6).

After the incident, Plaintiff submitted a request to the gallery officer to be removed from the cell, but the request was ignored for days.  He also put in sick call slips that were ignored. (Doc. 1, p. 7).  Plaintiff was not seen by a physician until December 3 or 4, 2014.  Sesson was finally removed from Plaintiff's cell approximately four days after the attack.  (Doc. 1, p. 7).  He went on to kill his next cell mate, Bernard Simmons.  (Doc. 1, p. 7).

Plaintiff alleges that when he finally received health care for the strangulation incident, Dr. Gulioto recorded the following notations in his medical records: 1) can't control movements; 2) family trying to kill me.  (Doc. 1, p. 15).  Plaintiff believes these are inaccurate statements and distort what he said to Gulioto.  Specifically, Plaintiff alleges that he reported fears that the prison staff was trying harm him through their control of movement passes and that he believed the that his victim's family, not his own, was trying to kill him.  (Doc. 1, p. 15).

Benefield also spread a rumor about Plaintiff that Plaintiff had dropped a kite on some other inmates about an incident that Plaintiff knew nothing about.  (Doc. 1, p. 7).  Plaintiff requested protective custody status on December 1, 2015.  (Doc. 1, p. 8).  Butler denied it on January 23, 2015.  (Doc. 1, p. 8).

Plaintiff was placed in segregation on January 25, 2015, but was never issued a disciplinary ticket or informed why he went to segregation.  (Doc. 1, p. 8).  During that time, he received an anonymous death threat which he turned over to Correctional Officer Englelade. (Doc. 1, p. 8).  Plaintiff then submitted another request for protective custody on February 25, 2015.  (Doc. 1, p. 9).  The request was denied on March 2, 2015.  (Doc. 1, p. 9).  Plaintiff appealed the request to the ARB and a video hearing was held with Bennette on April 23, 2015.

(Doc. 1, p. 9).  Plaintiff's request for protective custody was denied on May 5, 2015.  (Doc. 1, p. 9).  The denial was signed by Bennette, and the then acting IDOC Director Donald Stolworthy.  (Doc. 1, p. 9).  Plaintiff further alleges that the denial contained misrepresentations and lies.  (Doc. 1, p. 9).  For example, the report found that Plaintiff stated that inmates try to harm him because he tells things when he sees them.  (Doc. 1, p. 9).  The report also stated that Engelade denied that Plaintiff gave him an anonymous note threatening his life.  (Doc. 1, p. 10).  Plaintiff alleges that Engelade told Plaintiff in the presence of Jones that he gave the note to Internal Affairs.  (Doc. 1, p. 10).

On August 26, 2015, Plaintiff was subjected to a strip search.  (Doc. 1, p. 10).  As part of the strip search, Plaintiff had to bend over and spread his butt cheeks.  (Doc. 1, p. 10).  Plaintiff was then interviewed by internal affairs.  (Doc. 1, p. 11).  He was then strip searched again by Andrew Spiller.  (Doc. 1, p. 11).  The Correctional Officer conducting the search "looked at Plaintiff with an offensive smirk, smiled, and said thank you."  (Doc. 1, p. 11).  Plaintiff alleges that the same officers strip searched him again moments later.  (Doc. 1, p. 12).  When Plaintiff returned to his cell, his property was in disarray and he was told that he was being transferred to segregation.  (Doc. 1, p. 12).  No one told Plaintiff why he was being sent to segregation.  (Doc. 1, p. 12).

When Plaintiff arrived in the segregation unit in the North II cell house, a guard named Big E grabbed Plaintiff by the back of the neck and squeezed while shoving Plaintiff's face and forehead into the brick wall of the building.  (Doc. 1, p. 13).  Plaintiff was strip searched again by Big E in front of six other officers.  (Doc. 1, p. 13).

Plaintiff was then taken to Cell 503, which had poor ventilation, feces on the walls and smelled of urine.  (Doc. 1, p. 13).  It also had a rusted bed and door and lacked a power outlet.

(Doc. 1, p. 13).  The light in cell 503 stayed on for 24 hours a day and Plaintiff could not sleep for three days because of it.  (Doc. 1, p. 14).  While in that cell, Plaintiff was deprived of his blood pressure medication and believes that he suffered a stroke as a result of the denial.  (Doc. 1, p. 13).  Plaintiff was also denied medical care for the injuries inflicted by Big E.  (Doc. 1, p. 14).  Plaintiff was eventually moved to Cell 835, where he stayed for two weeks until he was released back into general population.  (Doc. 1, p. 14).  He was never issued a disciplinary ticket. (Doc. 1, p. 14).  Plaintiff believes that his sick call slips were ignored in retaliation for his grievance activity.  (Doc. 1, p. 14).

Plaintiff is an attorney, although his license to practice law has been suspended during the pendency of disciplinary proceedings.  He has divided his Complaint into the following claims, which the Court will use in all further proceedings in this case:

1. **Failure to protect against Benefield for setting in motion the violent attack Plaintiff suffered at the hands of Sesson**

2. **Failure to protect against Butler, Schoenbeck, Tracy Lee, Jeannette Hecht, Michael Hef, Aaron Runge, Erin Carter, Lance Phelps, Andrew Dillingham, Andrew Spiller, Brandon Anthony, Unknown Placement staff, Unknown correctional officers, unknown sergeants, unknown lieutenants, unknown majors that were assigned to North II cell house 3 gallery at the relevant time for placing Plaintiff in the cell with Sesson.**

3. **Defamation against Benefield for telling other inmates that Plaintiff dropped a kite about an incident**

4. **Defamation against Bennette, unknown Administrative Review Board Panel members and former IDOC director Stolworthy for publishing information that gives the impression that Plaintiff is a confidential informant**

5. **False and misleading statement in a state administrative proceeding against Bennette, unknown Administrative Review Board Members, and Donald Stolworthy for implying that Plaintiff made up a story about receiving a kite threatening his life**

6. **Conspiracy against Bennette, unknown ARB Panel members, and Stolworthy for conspiring to cover up the attack on Plaintiff**

7. **A state law battery claim against Big E for grabbing Plaintiff by the neck and shoving his face into the wall**

8. **An excessive force claim under the Eighth Amendment against Big E for grabbing Plaintiff by the neck and shoving his face into the wall**

9. **Deliberate indifference against unknown correctional officers in North II cell house, Unknown Sgt. assigned to 3 gallery in North II, Charlotte Miget, and unknown health care staff for denying Plaintiff medical attention after he was attacked by David Sesson**

10. **Deliberate Indifference claim against unknown correctional staff, Jones, Unknown health care staff assigned to 5 gallery in North II cell house for refusing Plaintiff medical care after he was attacked by Big E and incarcerated in a cell that elevated his blood pressure.**

11. **Fourth Amendment violation against Benefield and the unknown correctional officer assigned to 5 gallery in North I cell house for performing an unreasonable search and seizure of Plaintiff's cell and for failure to intervene in the unreasonable search**

12. **Fourth Amendment violation against Spiller, Big E and other unknown officers for conducting an "unreasonable search" of Plaintiff's body by subjecting him to multiple strip searches and forcing him to spread his butt cheeks.**

13. **Eighth Amendment unconstitutional conditions of confinement claim based in the conditions of cell 503 against Big E, Jones, and unknown correctional and unknown medical staff assigned to 5 gallery in the North II cell house**

14. **Eighth Amendment deliberate indifference claim for depriving Plaintiff of access to his blood pressure medication against Big E, Jones, unknown correctional staff, unknown medical staff**

15. **Eighth Amendment conditions of confinement claim against Jones, for the conditions in Cell 503**

16. **Campaign of harassment, including mental abuse, retaliatory conduct, and threats against Benefield in retaliation for Plaintiff filing grievances**

17. **Intentional interference with prospective business opportunities against Benefield for starting a rumor that Plaintiff dropped a kite on another inmate, as such a rumor would be detrimental because Plaintiff is an attorney and is expected to maintain strict confidence and confidentiality**

18. **Intentional interference with prospective business opportunities against Bennette, Stolworthy, and unknown ARB members for publishing a lie in the correspondence**

**denying Plaintiff protective custody that had the effect of damaging Plaintiff's reputation as an attorney**

19. **Intentional interference with prospective business opportunities against Galioto for publishing information in Plaintiff's medical records that suggests Plaintiff lacks self-control or that he believes his own family is trying to kill him, which would negatively affect perceptions of Plaintiff's competence**

20. **Intentional infliction of severe emotional distress against Benefield based on his harassment, abuse, retaliation, and systematic road blocks.**

Plaintiff requests monetary damages in the amount of one million dollars as well as declarative and injunctive relief.

<u>Discussion</u>

**Counts 1 and 2- Failure to Protect**

The Eighth Amendment to the United States Constitution protects prisoners from being subjected to cruel and unusual punishment.   U.S. CONST., amend. VIII.  *See also Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010).   Eighth Amendment protection extends to conditions of confinement that pose a substantial risk of serious harm, including health and safety.  *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012).  Prison officials can violate the Eighth Amendment's proscription against cruel and unusual punishment when their conduct demonstrates "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).  A prison official may be liable "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Proving deliberate indifference, however, requires more than a showing of negligent or even grossly negligent behavior.  *Id*. at 835.  Rather, the corrections officer must have acted with the equivalent of criminal recklessness.  *Id*. at 836–37.  Once prison officials know about a

serious risk of harm, they have an obligation "to take reasonable measures to abate it," even if harm is not averted.  *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006); *see also Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008).

Failure to protect is a claim that falls under the deliberate indifference rubric.  *See Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir 2010).  It is only an Eighth Amendment violation if the deliberate indifference "effectively condones the attack by allowing it to happen."  *Id.* (citing *Lewis v. Richards*, 107 F.3d 549, 553 (7th Cir. 1997)).  A prisoner must allege sufficient facts to show "that the defendants had actual knowledge of an impending harm easily preventable so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." *Id.*

Here, Plaintiff has stated a claim against Benefield in Count 1 for failure to protect.  His factual allegations that Benefield made a comment suggesting that Plaintiff would not like his next cell assignment, and that he was moved shortly after an incident with Benefield create a basis for Plaintiff's assertion that Benefield was aware of Sesson's history.  Likewise, Plaintiff's claims against the named Defendants in Count 2 are sufficient to state a claim and survive threshold review.

However, Plaintiff's claims against the other multiple unknown Defendants in Count 2 are much more conclusory and bare bones.  A pro-se Plaintiff may sue unknown Defendants. *Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995) ("The principle is implicit in the many cases, most famously *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 390 n. 2, 91 S.Ct. 1999, 2001 n. 2, 29 L.Ed.2d 619 (1971), that take for granted the right of a plaintiff to sue unknown injurers").  This is particularly true where the plaintiff is also a prisoner and has had no chance prior to filing the complaint to engage in a pre-

trial investigation. *Id.*; see also *Billman v. Indiana Dep't of Corr.*, 56 F.3d 785, 790 (7th Cir. 1995) ("The absence of names creates justifiable skepticism concerning this claim, but for the reasons previously set forth a determination of frivolousness would be premature when the plaintiff has been given no chance to explain why he cannot (if he cannot) identify the guilty guards."). Therefore, Plaintiff's claims against unknown placement staff, and unknown correctional officers, including sergeants, majors, and lieutenants, assigned to North II Cell House 3 Gallery, who knew that Sesson had made threats regarding future cellmates will proceed.

### Counts 3-5- Defamation and False and Misleading Statements

Claims for defamation are not actionable under § 1983. *Batagiannis v. Lafayette Comty. Sch. Corp.*, 454 F.3d 738, 742 (7th Cir. 2006); *Bone v. Lafayette*, 919 F.2d 64 (7th Cir. 1990). Plaintiff's Complaint does not state that he is attempting to bring these claims pursuant to state law, nor does it cite 28 U.S.C. § 1367, the source of federal pendant jurisdiction over state law claims. At other points in the Complaint, Plaintiff specifically stated that he was bringing claims pursuant to state law. Although the Court is obligated to construe pro-se pleadings broadly, Plaintiff is a former attorney, and indeed some of his claims state that he has hopes of practicing law again. The Court therefore presumes he understands the difference between state and federal law. As such, these Counts will be dismissed because there is no federal cause of action for defamation or false or misleading statements.

Even if the Court were to construe these defamation claims as brought pursuant to state law, they would still fail. The three elements of defamation under Illinois state law are: 1) the defendant made a false statement about the Plaintiff; 2) the defendant caused an unprivileged publication of the statement to a third party; and 3) the publication of the statement harmed the

plaintiff. *Knafel v. Chicago Sun-Times, Inc.*, 413 F.3d 637, 639 (7th Cir. 2005) (citing *Parker v. House O'Lite Corp.*, 756 N.E.2d 286 (Ill. App. 2001)). The publication requirement is satisfied when the information is communicated to a third person. *Goldstein v. Kinney Shoe Corp.* 931 F.Supp. 595, 598 (7th Cir. 1996). Actions for defamation pursuant to Illinois state law shall be commenced within one year next after the cause of action accrued. 735 ILCS 5/13-201.

Plaintiff's first claim for defamation falls on statute of limitations grounds. Plaintiff alleges that Benefield spread rumors about him in the fall of 2014, around the time Plaintiff was moved into Sesson's cell. Accordingly, Plaintiff would have had to bring those claims by the fall of 2015, instead of waiting until May 2, 2016.

As to Count 4, Plaintiff has not alleged that the defamatory information was published to a third party. Therefore he has inadequately pleaded a state law claim for defamation. As to Count 5, the Court has identified no cases which support a recovery for false and misleading statements in a state administrative proceeding. To the extent that this claim could be construed as a defamation claim, it fails under federal law for failure to state a claim and fails under state law because Plaintiff has not alleged either that the false and misleading statements were published to third parties or that he was harmed by the false and misleading statements. For the above reasons, Counts 3-5 will be **DISMISSED**.

### Count 6 – Conspiracy

To prove a § 1983 conspiracy claim, the plaintiff must show that 1) a state official and a private individual reached an understanding to deprive the plaintiff of his constitutional rights, and 2) those individuals were willful participants in the unlawful activity with the state actor. *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013) (citing *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012)). Typically, the evidence must reflect a "concerted effort" between the parties.

*Whitlock v. Brueggemann*, 682 F.3d 567, 577 (7th Cir. 2012).   It is not enough for the conspirators to share the same objective, rather a conspiracy requires that there be an agreement, express or implied, to reach a desired result.   *Cooney*, 735 F.3d at 519 (quoting *Hampton v. Hanrahan*, 600 F.2d 600, 621 (7th Cir. 1979)).

All Defendants in this case are state actors.   It is likely that this claim is superfluous and unnecessary.   *See Turley v. Rednour*, 729 F.3d 645, 649 n. 2 (citing *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009) (finding that the function of a § 1985 conspiracy claim is to "permit recovery from a private actor who has conspired with state actors" and without private actors, the conspiracy claim adds only "needless complexity.")).   Regardless, Plaintiff has failed to allege any agreement on behalf of the Defendants to deprive him of his constitutional rights.   Therefore, Plaintiff's conspiracy claim will be **DISMISSED**.

### Count 7 and 8- Excessive force and state law battery against Lt. Big E

An officer violates a prisoner's right under the Eight Amendment when he causes the unnecessary and wanton infliction of pain.   *Forrest v. Prine*, 620 F.3d 739, 744 (7th Cir. 2010) (quoting *Lewis v. Downey*, 581 F.3d 467 (7th Cir. 2009).   While "a good faith effort to maintain or restore discipline" is not unnecessary and wanton, a malicious and sadistic use of force with the intent to cause harm falls under that rubric.   *Id.* (citing *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).   The following factors may be considered when determining   for what purpose a defendant used force: 1) the need for force; 2) the amount of force used; 3) the threat reasonably perceived by the officer; 4) efforts to mitigate the amount of force used; and 5) the extent of the injury caused by the force.   *Lewis v. Downey*, 581 F.3d 467, 477 (7th Cir. 2009).

Pursuant to Illinois state law, battery is defined as the unauthorized touching of another's person.   *Welton v. Ambrose*, 814 N.E. 962 (Ill. App. 2001).

The Court finds that Plaintiff has stated claims for excessive force and battery, and those claims shall be permitted to proceed in this case.  However, the Court notes that although Plaintiff has pled two distinct legal theories, they are based on the same set of facts and Plaintiff will only be permitted one recovery under the law for the same harm.

**Count 9-10, 14 – Deliberate Indifference**

Deliberate indifference to prolonged, unnecessary pain can be a basis for an Eighth Amendment claim.  *Smith v. Knox County Jail*, 666 F.3d 1037, 1039 (7th Cir. 2012).  The length of the delay that is tolerable depends on the seriousness of the condition and the ease in providing treatment.  *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010).  A few days' delay addressing a readily treatable condition suffices to state a claim.  *Rodriguez v. Plymouth Ambulance Service*, 577 F.3d 816, 832 (7th Cir. 2009); *Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2009); *Edwards v. Synder*, 478 F.3d 827, 830-31 (7th Cir. 2007).

Here, in Count 9, Plaintiff has alleged that his requests for medical treatment went unanswered between November 5, 2014, the day he was attacked by Sesson, and December 3 or 4, 2014, when he finally saw a doctor.  This is sufficient to state a claim.  However, Plaintiff has named numerous John Does in this Count.  As discussed more fully above with regards to Counts 1 and 2, although Plaintiff's inclusion of a collective group of John Does is problematic to his claim, he shall be permitted to conduct an investigation into which correctional officers in the North II cell house and which unknown health care staff has access to his medical request slips during the relevant time period.  His claim will also proceed against the unknown sergeant assigned to 3 gallery in the North II cell house and Nursing Supervisor Charlotte Miget.

In Count 10, Plaintiff likewise brings claims against unknown Defendants for failing to provide him with blood pressure medication in August-September 2015, and failure to respond to

his medical request slips for his alleged injuries and elevated blood pressure.  These claims will also be permitted to proceed so that Plaintiff may investigate the identity of those who received and ignored his request slips.

Both Counts 9 and 10, although titled as deliberate indifference counts, use the word "conspiracy" to describe them.  The Court does not find that either count states a claim for conspiracy.  A formulaic recitation of cause of action is insufficient to state a claim.  *Brooks v. Ross*, 578 F.3d 574, 581-82 (7th Cir. 2009) (finding pro-se plaintiff had failed to properly plead a conspiracy under *Twombly* where he made conclusory allegations that were just as consistent with lawful action as conspiracy).  Plaintiff has not sufficiently pleaded conspiracy and Count 9 and 10 will proceed as to deliberate indifference only.

Although Count 14 is extremely similiar to Count 10, Plaintiff appears to be alleging in Count 10 that his request for the medical call line to address his problems of high blood pressure and injuries was ignored while Count 14 raises the issue of the denial of blood pressure medication.  While the Court is not sure that these counts need to be separate, to the extent that Count 14 is raising a factually distinguishable claim based on denying Plaintiff his medication, it shall proceed.

### Count 11 – Cell search violates Fourth Amendment

Plaintiff argues that his cell was searched without any proper penological reason in violation of the Fourth Amendment.  However, the Fourth Amendment's proscription against unreasonable searches does not apply to prison cells. *Jones v. Walker*, 358 F. App'x 708, 712 (7th Cir. 2009) (citing *Hudson v. Palmer,* 468 U.S. 517, 526 (1984); *Hanrahan v. Lane,* 747 F.2d 1137, 1139 (7th Cir.1984)).   In addition, a state employee's unauthorized acts depriving a prisoner of personal property do not violate the Due Process Clause if state law provides a

meaningful post-deprivation remedy, and Illinois law does. *See Hudson,* 468 U.S. at 533; *Murdock v. Washington,* 193 F.3d 510, 512-13 (7th Cir.1999); *Kimbrough v. O'Neil,* 523 F.2d 1057, 1059 (7th Cir.1975). Thus, Plaintiff states no claim for the allegedly unconstitutional search of his cell and this claim will be **DISMISSED**.

### Count 12- Strip search violates Fourth Amendment

Unlike searches of a prisoner's cell, the Seventh Circuit has not completely foreclosed the possibility that strip searches may violate the Fourth Amendment. *Peckham v. Wisconsin Dept. of Corrections*, 141 F.3d 694, 697 (7th Cir. 1998). The Court has noted, however, "that it is difficult to conjure up too many real-life scenarios where prison strip searches of inmates could be said to be unreasonable under the Fourth Amendment." *Id*. Still, at this stage in the case, Plaintiff's claims that the strip searches he endured were unreasonable rise to the level of plausible. Plaintiff will be permitted to proceed with Count 12.

However, Plaintiff has included another group of John Doe Defendants whom he alleges "were present." Under § 1983, individuals must be personally involved for liability to attach. *Minix v. Canarecci*, 597 F.3d 824, 834 (7th Cir. 2010). Although direct participation is not a requirement, there must at a minimum, facts tending to show that a defendant acquiesced in some demonstrable way in the alleged constitutional violation. *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003). Plaintiff's allegation here is that the strip searches were unreasonable because the guards conducted several during a short period of time, during which Plaintiff was never out of custody of the guards. Plaintiff argues that he could not have secured contraband during that time. But Plaintiff only alleges that the unknown guards were present for only one of the strip searches. He does not allege that they knew about the other strip searches or that they acquiesced in the entire course of conduct that Plaintiff complains of. As such, Plaintiff has not

adequately stated a claim against the John Doe Defendants listed in this count and they will be dismissed.

### Counts 13 and 15- Conditions of Confinement

Plaintiff has alleged a conditions of confinement claim in both Count 13 and Count 15. The Court finds no meaningful distinction between the two claims.  In a conditions of confinement case, the plaintiff must prove both the objective factor—that he suffered a sufficiently serious deprivation—and the subjective factor—that the defendant subjectively acted with deliberate indifference to the plaintiff's condition of confinement—to prove that an Eighth Amendment constitutional violation occurred. *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008); *Helling v. McKinney*, 509 U.S. 25, 35 (1993).  With respect to the objective factor, the plaintiff is required to show scientific and statistical proof of the potential harm and the likelihood that such injury to health will actually be caused by the condition of confinement.  *Id*. at 36.  The Court accepts as true Plaintiff's allegations regarding the conditions of his cell at this time.  Further, a court is required to assess whether society considers the risk that the prisoner complains of to be "so grave that it violates contemporary standards of decency to expose *anyone* unwilling to such a risk."  *Id*.  With respect to the subjective factor, the defendant must have known of the substantial risk of serious harm but disregarded that risk by failing to take reasonable measures to address it.  *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008), *citing Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

The problem with these counts is that Plaintiff has not alleged that any of the Defendants were actually involved in the decision to place him in Cell 503 or that he complained to any of them about the conditions therein.  Paragraph 79 of Plaintiff's Complaint does not identify any Defendant who escorted Plaintiff to the cell.  Likewise, although he alleges that he submitted

medical request slips during his two weeks in segregation regarding the injuries allegedly inflicted by Big E and his high blood pressure, Plaintiff does not allege that he complained to anyone about the conditions in cell 503.   Plaintiff has not adequately pleaded personal involvement on the part of any defendant, named or unnamed on his conditions of confinement claim.  Therefore these claims will be **DISMISSED without prejudice.**

### Count 14 – Campaign of Harassment

The Court believes that Count 14 more properly states a retaliation claim, as Plaintiff indicates that he believes that he was treated poorly to due to his protected First Amendment conduct.  An inmate has a constitutional right to file a grievance as part of his right of access to the courts under the First Amendment.  *DeWalt v. Carter*, **224 F.3d 607, 618 (7th Cir. 2000)**. Retaliatory official action violates the Constitution, even if the officer would be otherwise authorized to take that action in the absence of a retaliatory motive.  *Zimmerman v. Tribble*, **226 F.3d 568, 573 (7th Cir. 2000)**.  To succeed on a First amendment Retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action.  *Bridges v. Gilbert*, **557 F.3d 541, 546 (7th Cir. 2009).**

In the prison context, where an inmate is alleging retaliation, it is not enough to simply state the cause of action.  The inmate must identify the reasons that retaliation has been taken, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s).  *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  As stated above, the inmate need not plead facts to establish the claim beyond doubt, but need only

provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Id.*

Here, Plaintiff has alleged generally that he filed grievances, but he has not identified specific grievances by date or incident, which drew the alleged retaliation. *See Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002) ("Had Higgs merely alleged that the defendants had retaliated against him for filing a suit, without identifying the suit or the act or acts claimed to have constituted retaliation, the complaint would be insufficient."). Plaintiff must identify the specific grievances or other protected conduct that caused the alleged retaliation. Otherwise, Defendants do not have proper notice about the contours of his claim in order to prepare their response. Having not identified his protected conduct, his claim must be **DISMISSED** at this time.

### Counts 17-19 Intentional Interference with Prospective Business Opportunity

Plaintiff's Counts 17-19 do not state claims pursuant to Federal law or assert rights protected by § 1983. Illinois state law does recognize the tort of interference with prospective business advantage and the Court presumes that this is the claim that Plaintiff is attempting to make. To state a claim for intentional interference with prospective business advantage, plaintiffs must allege (1) a reasonable expectation of entering a valid business relationship with a third party; (2) knowledge of that relationship on the part of the defendant; (3) defendant's purposeful interference with and defeat of that expectancy; and (4) injury to plaintiff as a result. *A–Abart Elec. Supply, Inc. v. Emerson Elec. Co.,* 956 F.2d 1399, 1404 (7th Cir. 1992), *cert. denied,* 506 U.S. 867 (1992); *Kurtz v. Illinois Nat'l Bank,* 534 N.E.2d 1007, 1012 (1989). In addition, plaintiff must prove that the tortfeasor acted with actual malice, *i.e.,* the individual acted with a desire to harm that was unrelated to the interest he was presumably trying to protect

by bringing about the contract breach. *Capital Options Inv., Inc. v. Goldberg Bros. Commodities, Inc.,* 958 F.2d 186, 189 (7th Cir.1992).

Plaintiff has alleged that Defendants' various acts have interfered with potential job opportunities he might have as an attorney.  Not only is Plaintiff a convicted murderer, his law license is also currently suspended pending further disciplinary proceedings.  Therefore, He is not currently licensed to practice law.  Plaintiff makes all three claims on the explicit assumption that his conviction will be overturned and that he will be reinstated as a licensed attorney.  The Court finds that assumption far too speculative at this time.  Generally speaking, Illinois Courts have held the hope of receiving a job offer is not a sufficient reasonable expectancy. *Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (1996).  Here Plaintiff does not even have that.  He has the hope of someday being able to entertain job offers from clients.  The Court finds that Plaintiff has failed to adequately plead intentional interference with prospective business opportunities.  Counts 17-19 will be **DISMISSSED**.

### Count 20 – Intentional Infliction of Severe Emotional Distress

Under Illinois law, the tort of intentional infliction of emotional distress covers only acts that are truly "outrageous," that is, an "'unwarranted intrusion . . . calculated to cause severe emotional distress to a person of ordinary sensibilities.'" *Knierim v. Izzo*, 174 N.E.2d 157, 164 (Ill. 1961) (quoting *Slocum v. Food Fair Stores of Fla.*, 100 So. 2d 396 (Fla.1958)).  *See Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001).  The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress.  *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988).  To be actionable, the

defendant's conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker*, 256 F.3d at 490 (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. 1993). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

It is clear, however, that "the tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.' " *McGrath*, 127 Ill.Dec. 724, 533 N.E.2d at 809 (quoting Restatement (Second) of Torts § 46, cmt. d (1965)). Instead, the conduct must go beyond all bounds of decency and be considered intolerable in a civilized community. *See Kolegas v. Heftel Broad. Corp.*, 154 Ill.2d 1, 180 Ill.Dec. 307, 607 N.E.2d 201, 211 (1992); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 242 Ill.App.3d 707, 182 Ill.Dec. 876, 610 N.E.2d 745, 749 (1993). Thus, to serve as a basis for recovery, the defendant's conduct must be such that the " 'recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim[:] Outrageous!' " *Doe v. Calumet City,* 161 Ill.2d 374, 204 Ill.Dec. 274, 641 N.E.2d 498, 507 (1994) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)) (internal quotation marks omitted).

Plaintiff only alleges that he suffered from pain and emotional trauma in paragraph 32, which refers back to the incident where he was celled with David Sesson. (Doc. 1, p. 7). The Court finds that the conduct alleged with respect to that incident could objectively be considered "extreme and outrageous". Accordingly, Plaintiff has adequately stated a claim for intentional infliction of emotional distress against Benefield, Butler, Schoenbeck, Tracy Lee, Jeannette Hecht, Michael Hef, Aaron Runge, Erin Carter, Lance Phelps, Andrew Dillingham, Andrew Spiller, Brandon Anthony, Unknown Placement staff, Unknown correctional officers, unknown

sergeants, unknown lieutenants and unknown majors that were assigned to North II cell house 3 gallery at the relevant time.

In conclusion, Counts 3-5 will be **DISMISSED with prejudice.** Counts 6, 11, 13, and 15-19 will be **DISMISSED without prejudice** for failure to state a claim upon which relief could be granted. Sherri Bennette, Donald Stolworthy, unknown ARB members, unknown officers who observed a strip search, and Dr. Galioto are **DISMISSED**. Claims 1-2, 7-10, 12, 14 and 20 shall proceed. Plaintiff may file an amended complaint if he can articulate facts that would entitle him to relief on Counts 6, 11, 13 and 15-19.

**Severance**

The Seventh Circuit has confirmed that separate, unrelated claims belong in different suits. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). On review of the Complaint, the claims against Defendants Benefield, Butler, Schoenbeck, Tracy Lee, Jeannette Hecht, Michael Hef, Aaron Runge, Erin Carter, Lance Phelps, Andrew Dillingham, Andrew Spiller, Brandon Anthony, Unknown Placement staff, Unknown correctional officers, unknown sergeants, unknown lieutenants, unknown majors that were assigned to North II cell house 3 gallery, Charlotte Miget, and unknown health care staff in Counts 1-2, 9, and 20 of the complaint are not sufficiently related to the claims against Defendants Big E, Spiller, Jones, unknown correctional staff, and unknown health care staff assigned to 5 gallery in North II cell house in Counts 7-8, 10, 12, and 14 so as to allow them to proceed together in one lawsuit.

The claims in Counts 1-2, 9, and 20 against Defendants Benefield, Butler, Schoenbeck, Tracy Lee, Jeannette Hecht, Michael Hef, Aaron Runge, Erin Carter, Lance Phelps, Andrew Dillingham, Andrew Spiller, Brandon Anthony, Unknown Placement staff, Unknown correctional officers, unknown sergeants, unknown lieutenants, unknown majors that were

assigned to North II cell house 3 gallery, Charlotte Miget, and unknown health care staff shall proceed in this original suit. The claims in Counts 7-8, 10, 12 and 14 against Defendants Big E, Spiller, Jones, unknown correctional staff, and unknown health care staff assigned to 5 gallery in North II cell house shall also proceed, but shall be severed into a separate action. Plaintiff shall be assessed a new filing fee for the severed case.

### Pending Motions

Plaintiff's Complaint requests multiple forms of preliminary injunctive relief, including that all defendants cease and desist harassing or retaliating against Plaintiff, that Plaintiff be immediately transferred to another institution and Defendants be permanently barred from housing Plaintiff at Menard. Plaintiff makes other requests for injunctive relief, but those relate to claims that have been dismissed at this time. In considering whether to grant injunctive relief, a district court is obligated to weigh the relative strengths and weaknesses of a plaintiff's claims in light of a five-part test that has long been part of the Seventh Circuit's jurisprudence. Specifically, a plaintiff must establish: (1) that there is a reasonable or substantial likelihood that he would succeed on the merits; (2) that there is no adequate remedy at law; (3) that absent an injunction, he will suffer irreparable harm; (4) that the irreparable harm suffered by plaintiff in the absence of the injunctive relief will outweigh the irreparable harm that defendants will endure were the injunction granted; and (5) that the public interest would be served by an injunction. *Teamsters Local Unions Nos. 75 and 200 v. Barry Trucking*, 176 F.3d 1004, 1011 (7th Cir. 1999).

Plaintiff has made serious allegations related to his safety at Menard. However, his allegations that he was celled with a homicidal cell mate date back to 2014. His allegations that he was placed in a cell with unconstitutional conditions stems from incidents in 2015. There is

no allegation that Plaintiff is currently housed in a gallery with Benefield, whom he alleges has harassed and retaliated against him.  There is no allegation that Plaintiff is housed with Sesson. There is no allegation that Plaintiff is in cell 503, and in fact the Complaint states that Plaintiff was removed from that cell after a few days.  Plaintiff does not allege any ongoing course of conduct that would put him at risk. Simply put, there are no allegations that support the conclusion that Plaintiff would suffer irreparable harm if an injunction is not granted at this time. Plaintiff is free to file another motion requesting a preliminary injunction if he believes that he can articulate sufficient facts to support it.  But for now, Plaintiff's request for a preliminary injunction is **DENIED**.

Plaintiff's motion for recruitment of counsel remains **PENDING** and shall be referred to United States Magistrate Judge Frazier for a decision.  (Doc. 3).

### Disposition

**IT IS HEREBY ORDERED** that Counts 3-5 will be **DISMISSED with prejudice.** Counts 6, 11, 13, and 15-19 will be **DISMISSED without prejudice** for failure to state a claim upon which relief could be granted.   Sherri Bennette, Donald Stolworthy, unknown ARB members, unknown officers who observed a strip search, and Dr. Galioto are **DISMISSED.** Counts 1-2, 7-10, 12, 14 and 20 shall proceed, although Counts 7-8, 10, 12 and 14 shall be severed into a separate suit and a new filing fee assessed.

**IT IS ORDERED** that the Clerk of Court shall prepare for Defendants Benefield, Butler, Big E, Andrew Spiller, Josh Schoenbeck, Tracy K. Lee, Jeanette C. Hecht, Michael Hot, Aaron Runge, Erin Carter, Andrew Dillingham, Lance Phelps, Brandon M. Anthony, and Charlotte Miget: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy

of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on the Unknown (John Doe) Defendants until such time as Plaintiff has identified them by name in a properly filed amended complaint.  Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or  counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge Frazier for further pre-trial proceedings.

Further, this entire matter is **REFERRED** to United States Magistrate Judge Frazier for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: July 22, 2016**

<u>s/ STACI M. YANDLE</u>
**U.S. District Judge**