IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FREDRICK GOINGS, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 16-cv-489-SMY-RJD |
| JOHN BALDWIN, et al., | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Fredrick Goings, an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this lawsuit pursuant to 42 U.S.C. § 1983, asserting that his constitutional rights were violated while he was incarcerated at Menard Correctional Center ("Menard"). This matter is now before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Reona J. Daly (Doc. 227), recommending that Defendant Dr. Mia Galioto's Motion for Summary Judgment (Doc. 183) be granted.

Plaintiff filed a "Motion to Vacate the Report and Recommendation" (Doc. 239), which the Court construes as a timely-filed objection. For the following reasons, Judge Daly's Report and Recommendation is **ADOPTED** and summary judgment is **GRANTED** in favor of Dr. Galioto.

## Factual Background

Goings alleges that he was attacked and strangled by his cellmate, David Sesson, on November 5, 2014. Following the attack, Goings was treated by a psychiatrist, Dr. Galioto, in early 2015. He claims that Dr. Galioto made entries in his medical records that are inaccurate and distort what he said, making him sound mentally ill. Specifically, he points to two notations:

that he "Can't Control Movements" and "Family trying to kill [him]." (Doc. 82, ¶¶ 144-149). The sole claim against Dr. Galioto is an Illinois state law claim for intentional infliction of emotional distress based on her allegedly publishing misrepresentations regarding Plaintiff in his medical records.

Goings' mental health records indicate he was seen by Dr. Galioto twice. (Doc. 184-1). On January 30, 2015, Dr. Galioto saw Goings and wrote a Progress Note in which she indicated that his appearance, behavior, mood, affect, concentration, memory, speech, and thoughts were "appropriate" and that his thought processes were goal-directed, coherent and logical. (Id. at 3-4). Dr. Galiato's notes reflect statements by Goings statements that "[o]n November 5, 2014 he got strangled by cellmate," that he "can't relax," that he had another "familiar incident" wherein his "cellmate would take soap in a sock and hit him." (Id at 3.). Dr. Galioto also noted that Goings "feels paranoid and thinks his cellmate is talking to other IM in order to hurt him." (Id.). The record indicates that Goings did not want any medication (Id.).

Goings again saw Dr. Galioto on February 6, 2015. (Id. at 5). Dr. Galioto's notes from that visit indicate that Goings' appearance, behavior, mood, affect, concentration, memory, speech, and thoughts were "appropriate" and that his thought processes were again goal-directed, coherent and logical. (Id. at 5-6). Under the subjective reporting section, the February Progress Note attributes the following statement to Goings: "I can't control my movements" and "There are family members out against him." (Id. at 5). The objective section reflects that Goings was alert and oriented, pleasant and cooperative with fair eye contact. (Id. at 5). Galioto characterized his speech pattern as increased in rate and volume, his mood as "depressed", with an anxious affect but no suicidal or homicidal ideation and no hallucinations or delusions. (Id. at 5-6). She also stated that his memory appeared to be grossly intact, his concentration was normal and that he exhibited fair insight and judgment, normal sleep, and normal appetite. (Id. at

6).  Dr. Galioto's assessment was that Goings had "no major mental illness," although he reported suffering from Post Traumatic Stress Disorder (PTSD).  (Id. at 5).  She did conclude that he suffered from an Axis II personality disorder, but did not elaborate.  (Id.).  Once again her notes indicate that Goings did not want medication.  (Id.).

### **Legal Standard**

Since Goings filed a timely objection, this Court must undertake a *de novo* review of Judge Daly's findings and recommendations.  28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992).  De novo review requires the district judge to "give fresh consideration to those issues to which specific objections have been made" and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion."  *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013).  The Court "may accept, reject or modify the magistrate judge's recommended decision."  *Id.*  Consistent with these standards, the Court has reviewed Judge Daly's Report de novo.

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).  The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Estate of Simpson v. Gorbett*, 863 F.3d 740,

745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). When deciding a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 248 (1986); *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir.1995).

## Discussion

Under Illinois law, a claim for intentional infliction of emotional distress has three elements: the conduct involved must be truly extreme and outrageous; the actor must either intend that her conduct inflict severe emotional distress or know that there is a high probability that her conduct will cause severe emotional distress; and the conduct must in fact cause severe emotional distress. *Somberger v. City of Knoxville, Ill.*, 434 F.3d 1006, 1030 (7th Cir. 2006); *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). Galioto argues she is entitled to summary judgment because Goings cannot prove these elements.

Judge Daly found that the evidence fails to raise a genuine issue of material fact as to the first and third elements – whether Dr. Galioto's conduct was sufficiently extreme and outrageous, and in fact caused Goings severe emotional distress. Plaintiff's objection to Judge Daly's findings relate only to the question of whether certain medical records from another provider would show that he did in fact suffer severe emotional distress over Galioto's notations. Specifically, Goings claims that he was deprived access to his legal file and medical records needed to show that he actually suffered severe emotional distress, despite several extensions of time granted by Judge Daly for him to obtain the material.[1]

---

[1] Plaintiff later filed a Motion for Leave to file Objections to the Report and Recommendation (Doc. 253). As discussed in the Court's Docket Text Order (Doc. 250), Plaintiff filed his challenge to the Report and Recommendation during the time for filing an objection in the form of the Motion to Vacate, and the Court will not entertain multiple responses. The Court will therefore treat the Motion to Vacate as Plaintiff's objection. Moreover,

The Court agrees with Judge Daly's conclusion that summary judgment in favor of Dr. Galioto is appropriate in this case. In order establish the first element of an intentional infliction of emotional distress claim, the conduct at issue "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (1992) and *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (1993)). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Id*.

Here, no reasonable jury could conclude that the two statements at issue are so extreme and intolerable as to satisfy the objective standard for that element. First, Goings does not allege that he did not say words to the effect of "I can't control my movements" or "[t]here are family members out against [me]." Rather, he claims that Dr. Galioto's recording of those statements without context was outrageous because they suggest to someone reading the notes that he is mentally ill. However, the Progress Note containing those statements makes exceedingly clear that Dr. Galioto assessed Goings as having no major mental illness and that Goings himself was the only source of a PTSD diagnosis. Dr. Galioto states in both Progress Notes that Plaintiff's thought processes were goal-directed, coherent and logical. Anyone who might be inclined to interpret the two statements at issue in the manner Goings suggests would also read Dr. Galioto's explicit conclusions that Goings did not suffer from any major mental illness and his thought processes were not disordered. Viewing the Progress Note as a whole, no reasonable fact-finder could find that Dr. Galioto's notation of Plaintiff's statements were so extreme and outrageous as to support a claim for intentional infliction of emotional distress.

Additionally, Plaintiff has failed to provide any evidence suggesting an intent by Dr.

---

examination of Plaintiff's proposed objections reveal that they are primarily restatements of his arguments in the Motion to Vacate about why he was unable to produce the medical records to support his claim that he actually suffered emotional harm, as well as simple bald disagreements with Judge Daly's conclusions. As such, the Court's de novo review covers those concerns. Plaintiff's Motion for Leave (Doc. 253) is therefore DENIED.

Galioto's to cause him harm or knowledge of a high probability that her act of recording these notes would cause him severe emotional distress. As such, Plaintiff's claim fails on the second element as well.

For the foregoing reasons, the Court agrees with Judge Daly's findings, analysis and conclusions, and **ADOPTS** her Report and Recommendation. Accordingly, Defendant Mia Galioto's Motion for Summary Judgment (Doc. 183) is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Mia Galioto at the close of the case.

**IT IS SO ORDERED.**

**DATED: January 17, 2019**

<u>**s/ Staci M. Yandle**</u>
**STACI M. YANDLE**
**United States District Judge**