# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FREDRICK GOINGS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 16-CV-489-SMY-RJD ) |
| DONALD STOLWORTHY, KIMBERLY BUTLER, C/O BENEFIELD, ANDREW SPILLER, JOSH SCHOENBECK, TRACY K. LEE, JEANETTE C. HECHT, MICHAEL HOF, AARON RUNGE, ERIN CARTER, ANDREW DILLINGHAM, LANCE PHELPS, BRANDON M. ANTHONY, SHERRY BENTON, AND UNKNOWN PARTY, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on the Report and Recommendation ("Report") of United States Magistrate Judge Reona J. Daly (Doc. 270), recommending that the motion for summary judgment filed by Defendants Anthony, Benefield, Benton, Butler, Carter, Dillingham, Hecht, Hof, Lee, Phelps, Runge, Schoenbeck, Spiller, and Stolworthy (Doc. 229) be granted. Plaintiff Fredrick Goings filed an objection to the Report on February 22, 2019 (Doc. 310), three days late.[1] For the following reasons, Judge Daly's Report is **ADOPTED.**

## Background

Plaintiff Frederick Goings filed a Complaint pursuant to 42 U.S.C. § 1983, alleging Defendants were deliberately indifferent to his medical needs, failed to protect him, failed to

---

[1] Goings was granted until February 19, 2019 to file his objection (Doc. 296). The objection will nonetheless be considered.

intervene, used excessive force, and subjected him to unconstitutional conditions of confinement in violation of the Eighth Amendment. He also asserted several state law claims of defamation and intentional infliction of emotional distress (Docs. 1, 11). Goings' claims relate to an incident that occurred on November 5, 2014 at the Menard Correctional Center when he was violently attacked by his cellmate, David Sesson. Pursuant to an Amended Complaint, he is proceeding on the following claims:

> **Count 1:** An Eighth Amendment failure to protect claim against Benefield for setting in motion the violent attack by inmate David Sesson.
>
> **Count 3:** An Eighth Amendment claim for excessive force and unconstitutional conditions of confinement against Benefield for subjecting Goings to dangerous or restrictive conditions and guard brutality.
>
> **Count 4:** An Eighth Amendment failure to protect claim against Butler, Schoenbeck, Tracy Lee, Jeannette Hecht, Michael Hof, Aaron Runge, Erin Carter, Lance Phelps, Andrew Dillingham, Andrew Spiller, and Brandon Anthony.
>
> **Count 5:** A claim of state law defamation against Benefield for telling other inmates that Goings dropped a kite about an incident and referring to Goings as a rat and stool pigeon.
>
> **Count 6:** A claim of state law defamation against Benton and former Illinois Department of Corrections Director Stolworthy for written findings following a protective custody hearing.
>
> **Count 12:** An Eighth Amendment claim of deliberate indifference towards medical needs against Warden Butler for denying Goings medical care following the attack by inmate David Sesson.
>
> **Count 16:** A state law claim of intentional infliction of emotional distress against Benefield for setting in motion the attack by inmate David Sesson.
>
> **Count 17:** A state law claim of intentional infliction of emotional distress against Butler, Spiller, Tracy Lee, Schoenbeck, Jeannette Hecht, Michael Hof, Aaron Runge, Erin Carter, Andrew Dillingham, and Brandon Anthony for allowing the attack by inmate David Sesson.
>
> **Count 20:** A First Amendment claim of retaliation against Benefield for harassing

Goings in retaliation for filing grievances.[2]

(Docs. 79, 82, 112). Defendants, who are or were employees of the Illinois Department of Corrections, moved for summary judgment (Doc. 229). Goings filed a response (Doc. 266).

Judge Daly issued a Report setting forth the applicable law and her conclusions (Doc. 270). She found that there were no material facts in dispute and that there was insufficient evidence to support Goings' claims. Thus, she recommends that Defendants' Motion be granted and that the claims against them be dismissed with prejudice. Goings filed an objection to the Report on February 22, 2019 (Doc. 310).[3]

**Factual Background**

The following facts are either undisputed or drawn in a light most favorable to Goings, the non-moving party, except as otherwise stated. *See Carson v. ALL Erection & Crane Rental Corp.*, 811 F.3d 993, 994 (7th Cir. 2016): Goings was housed at Menard Correctional Center from June 2013 to June 2016 (Doc. 230-3, p. 3). When Goings first arrived there, he was prevented from accessing his legal property by Benefield, a maintenance officer who would "cover the galleries as a temporary officer," and who was covering the gallery where Goings was initially housed (*Id.* 78). Goings submitted a grievance about Benefield's actions during orientation and continued to file additional grievances about him (*Id.*).[4] Thereafter, Benefield began treating Goings poorly by preventing him from using call passes to access his property, being disrespectful, using

---

[2] The Report also lists Count 18, a claim against Defendant Mia Galioto for intentional infliction of emotional distress. Summary judgment was granted in favor of Galioto after the Report was issued, on January 17, 2019 (Doc. 300).

[3] In addition to the objection to the Report, Goings filed numerous motions including appeals of Judge Daly's Orders (Docs. 278 and 279), various motions for sanctions (Docs. 301, 303, 315, 335), motions for injunctive relief (Docs. 268, 339, 342), a motion for recruitment of counsel (Doc. 343), and other motions (Doc. 265, 311, 312, 317, 318, 321, 322, 326, 327, 329, 332, 336, 338). These motions will not affect this Court's consideration of the Motion for Summary Judgment and will be addressed, if necessary, by separate order.

[4] According to Goings' Cumulative Counseling Summary, the grievance was denied because his legal property had not been transferred to Menard at the time the grievance was written (Doc. 230-16, p. 11). No grievances have been submitted with the parties' filings on summary judgment.

profanity, and raising his voice (*Id*.). It is unclear from the record how long or if Benefield worked as a temporary officer in the gallery where Goings was housed after the initial orientation phase.[5]

In the Fall of 2014, Goings was having issues and he stopped Defendant Spiller as he was walking by to tell him that he was thinking about protective custody (*Id*. 17). Spiller, who was an internal affairs officer, told Goings that his department did not handle protective custody but that he could fill out a request to start the process (*Id*.). There is no evidence that Goings filled out a protective custody request.

Later, Goings heard from other inmates that Benefield was telling them he had written a kite (or note) about another inmate and that he was a snitch (*Id*. 63, 65). Goings, who was a lawyer prior to being incarcerated, believes that these accusations diminished his reputation and resulted in a loss of trust among the prison population (*Id*. 66). He did not suffer any physical injury because of the rumor but did lose friends and associates (*Id*.).

Thereafter, on October 28, 2014, Benefield was the acting sergeant on Goings' cell block (*Id*. 18). Benefield walked through the gallery claiming that someone tampered with paperwork (*Id*.). When he was outside Goings' cell, he said, "I better not find out who's been fucking with my shit, or I'm going to come and burn their house down" (*Id*.). He then ordered that Goings' cell be shaken down (*Id*.). After the shakedown, Goings' belongings were "trashed" and certain documents were missing (*Id*.). When Goings asked for a shakedown slip, he got into a verbal altercation with Benefield who said he was "going to open up that cell and kick [his] ass" and that "this is what you get when you fuck with me" (*Id*. 20). Benefield also commented, "[t]his is what happens when you piss me off, and I remember when you filed that grievance about legal property"

---

[5] Goings was originally assigned to the West Cellhouse (presumably where the orientation gallery is located) and then moved to the East Cellhouse on October 30, 2013 (Doc. 230-1, p. 2). He then was moved to the North Cellhouse on June 13, 2014 where he was almost continuously housed until his transfer to Pontiac Correctional Center on June 1, 2016 (*Id*. 1-2)

(*Id*. 78; Doc. 82, p. 9-10).⁶  Benefield then left.  A shakedown slip dated October 29, 2014 showed that Goings' cell did not contain contraband, although Goings did not receive the shakedown slip (Docs. 230-2, p. 1, Doc. 230-3, p. 19).

A day after the shakedown, Benefield told Goings to pack up his belongings because he was going to be transferred to another cell in the North II Cellhouse (Doc. 230-3, p. 21).  When Goings asked for assistance in moving his belongings, Benefield said no (*Id*. 59).  While he was being moved, Benefield said "let's see how you like your next fucking cellmate" (*Id*. 20).  This was the last interaction that Goings had with Benefield.  Benefield did not accompany Goings to his new cell.

When Goings arrived at his new cell, number 311 in the North II Cellhouse, he was housed with inmate David Sesson (*Id*. 21).  Sesson told Goings and the correctional officer who accompanied him that he did not want a cellmate (*Id*.).  Goings and Sesson avoided each other.  While Sesson did not threaten him, he made clear that he did not want Goings on the floor while he was on the floor.  Goings tried to keep to himself (*Id*.).

A few days later, on November 5, 2014, Goings jumped down from his bunk onto the floor in order to get ready for chow (*Id*. 23).  Sesson told him "I told you, don't be on the floor when I am on this floor" (*Id*).  Sesson then attacked Goings, knocking him down and tackling him to the floor where he proceeded to strangle Goings with extension cords (*Id*. 23-4).  Goings lost consciousness.  When he came to, he heard another inmate tell Sesson to cut it out (*Id*. 24).  He then saw blood on the floor and discovered that he had a gash on his finger, a missing finger nail, and blood shot eyes (*Id*. 25, 52).  Goings sought help from an unknown correctional officer who told him to write a "scribe," which he did, indicating that he was just strangled and needed to be

---

⁶ In his deposition, Goings was not clear when Benefield made this statement. However, his verified Amended Complaint may indicate that the statement was made around the time his cell was shaken down (Doc. 82, pp. 9-10).

separated from Sesson (*Id*. 25). He was not immediately removed from his cell even after he told another correctional officer about the attack (*Id*.).

The next day, Sesson told Goings not to complain about the incident (*Id*. 53). Goings sought medical care by sending requests to the healthcare unit and asking for care from healthcare workers (*Id*. 49-50). Within a week, he wrote a letter to the Warden, Kimberly Butler, telling her that an officer had set him up and placed him in the cell with Sesson knowing that he had threatened to kill his next cellmate (*Id*. 12, 51). He requested assistance in being moved and to prevent a similar incident from happening again (*Id*.).

On November 8, 2014, an investigation was conducted by Defendant Schoenbeck who interviewed Goings and Sesson (Doc. 230-5, Doc. 230-3, p. 54, Doc. 266-1, p. 9). Goings told Schoenbeck what happened and that he feared for his life (Doc. 230-3, p. 54). Nevertheless, Goings was placed back in the cell with Sesson. He continued to request immediate separation but was informed that Sesson would not be immediately moved (*Id*.). Sesson and Goings did not have another altercation, but Sesson told other inmates that Goings was a snitch (*Id*.). Sesson was removed from the cell a few days after his interview with Schoenbeck (*Id*. 55-57; Doc. 82, p. 16).[7] Prior to leaving, Sesson told Goings that he was paid to attack him and mentioned Benefield (Doc. 230-3, p. 56).

Goings requested protective custody on December 1, 2014 (*Id*. 71). While that determination was being made, he was placed in a cell with an inmate with the same gang affiliation as Sesson (*Id*.). Goings requested a new cell but was told by Defendant Hecht that he would remain in that cell unless he signed himself out of protective custody (*Id*.). Goings signed himself out of protective custody and filed another request for protective custody on February 25,

---

[7] This fact is disputed as set forth below.

2015 (*Id.*). That request was denied on March 2, 2015 and Goings appealed the decision to the Administrative Review Board ("ARB") (*Id.* 72-3). The ARB, through Defendant Benton, denied the appeal; a decision that was signed off on by Defendant Stolworthy (*Id.* 75). That decision was read out loud and within the hearing of Goings' cellmate and others (*Id.* 73).[8] Goings believes that his reputation was again injured by the ARB's opinion and its transmission to other inmates.

Goings did not speak to Defendants Butler, Schoenbeck, Lee, Hecht, Hof, Runge, Carter, Phelps, Dillingham or Anthony prior to the incident with Sesson (*Id.* 51). He did not tell any defendant about Sesson's behavior or any specific threats of harm prior to the attack (*Id.*). As a result of Goings' interview with Schoenbeck after the attack, Schoenbeck sent an email to the other defendants (except Benton, Stolworthy, Butler, and Benefield) on November 11, 2014 outlining the incident (*Id.* 12-13; Doc. 266-1).

Despite sending a number of requests for medical care, Goings was seen by an optometrist on December 2, 2014 and a doctor on December 3, 2014 (Doc. 230-6, pp. 7-11; Doc. 230-3, p. 55). There is no evidence that any defendant was aware of Goings request for medical care.

Goings also sought mental health treatment. A "mental health progress note" dated January 30, 2015 and signed by Psychiatrist Dr. Galioto recounts a host of incidents that Goings had while incarcerated, including the November 5, 2014 incident (Doc. 266-1, pp. 28-27). While the clinician's diagnosis was PTSD and personality disorder, the note indicates that objective findings were essentially normal and that Goings refused medication (*Id.*). He was told to follow-up as needed (*Id.*). The next month, Dr. Galioto again noted essentially normal clinical findings and found that there was "no major mental illness" (*Id.* 29). The note also states that Goings self-reported PTSD and had a personality disorder (*Id.*). In a subsequent mental health note dated

---

[8] Neither Defendants nor Plaintiff have provided the document signed by Defendants Benton or Stolworthy.

November 5, 2016, after he was transferred to Pontiac CC, Goings again discusses the events on November 5, 2014 and is assessed as having a paranoid personality (*Id*. p. 36-7). He was diagnosed with PTSD on December 7, 2016 (*Id*. 38-9) and was seen by mental health professionals once every three months thereafter (*Id*. 13-22). Goings claims that he has suffered from emotional distress, a deep sleep disorder, confusion, memory loss, and speech slips since the attack (*Id*. 66).

## Legal Standard

Since Goings filed an objection, this Court must undertake a *de novo* review of Judge Daly's findings and recommendations. 28 U.S.C. § 636(b)(1)(B), (C); FED. R. CIV. P. 72(b); SDIL-LR 73.1(b); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). De novo review requires the district judge to "give fresh consideration to those issues to which specific objections have been made" and make a decision "based on an independent review of the evidence and arguments without giving any presumptive weight to the magistrate judge's conclusion." *Mendez v. Republic Bank*, 725 F.3d 651, 661 (7th Cir. 2013). The Court "may accept, reject or modify the magistrate judge's recommended decision." *Id.* Consistent with these standards, the Court has reviewed Judge Daly's Report de novo.

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is filed, the adverse party "must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). When deciding a summary judgment motion, the Court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). Summary judgment will be denied where a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248; *Hedberg v. Indiana Bell Tel. Co.*, 47 F.3d 928, 931 (7th Cir.1995).

## Discussion

### General Objections

Goings first objects to consideration of Defendants' memorandum in support of their motion for summary judgment because the motion referred to a memorandum in support of a motion to dismiss. This is an obvious typo and does not affect the Court's consideration of the motion or memorandum on the merits.

Goings next objects to Judge Daly's citation to the document number and page number generated by CM/ECF rather than to the page numbers listed on the exhibits. Citations to the record are a mere courtesy, and Goings does not claim that he suffered any prejudice from the citations. This objection is therefore without merit.

Next, Goings asserts that he intends to elicit testimony at trial to prove his case. Summary judgment "requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trustees of Indiana University*, 870 F.3d 562, 569 (7th Cir. 2017). It is insufficient for Goings to merely state what he expects the evidence at trial to reveal.

Additionally, Goings may not rely on hearsay to support his claims, including his own testimony that Sesson told him Benefield hired Sesson to attack him. *See* Fed.R.Evid. 801(c). Finally, although Goings is "entitled to the benefit of reasonable inferences, that does not extend to inferences that are supported only by speculation and conjecture." *Matthews v. Waukesha County*, 759 F.3d 821, 824 (7th Cir. 2014). As such, Goings' speculation that there was a plot between Sesson and Benefield to attack him is not evidence. To the extent Goings relies on conjecture, speculation, and non-existent evidence to support his claims, such arguments are summarily rejected.

## Counts 1 and 4: Failure to Protect

Goings contends that Judge Daly erred in concluding that Benefield is entitled to judgment on Counts 1. Specifically, he argues that three pieces of evidence demonstrate Benefield was deliberately indifferent to the risk posed by transferring him to a cell with Sesson: Benefield's belief that Goings had tampered with his paperwork; Benefield's statement "Let's see how you like your next fucking cellmate" at the time of the transfer; and threats of harm Benefield directed at Goings just prior to the transfer ("I'm going to open up that cell and kick your ass"). Goings maintains these three events "set in motion" the assault by Sesson.

Prison officials have a constitutional duty to "take reasonable measures to guarantee the safety" of prisoners and protect them "from violence at the hands of other prisoners." *Brown* v. *Budz*, 398 F.3d 904, 909 (7th Cir. 2005). To prevail on a failure to protect claim, a prisoner must show that (1) "he is incarcerated under conditions posing a substantial risk of serious harm, and (2) defendant(s) "acted with deliberate indifference to that risk." *Id.* Goings claims that Benefield intentionally placed him in a cell with Sesson with the intent to cause him harm or at least with knowledge of a heightened risk of harm. He cites evidence that Benefield was belligerent towards

him and Benefield's statement that he will like his next cellmate. However, there is no evidence of any connection between Benefield and Sesson, no evidence that Benefield knew or had reason to know of Sesson's predilections, and no evidence that Benefield had any involvement in Goings' cell placement. Goings merely speculates that Benefield placed him in a dangerous situation. *See Billman v. Indiana Dept. of Corrections*, 56 F.3d 785, 788 (7th Cir. 1995) ("If [correctional officers] place a prisoner in a cell that has a cobra, but they do not know that there is a cobra there (or even that there is a high probability that there is a cobra there), they are not guilty of deliberate indifference even if they should have known about the risk, that is, even if they were negligent – even grossly negligent or even reckless in the tort sense – in failing to know."). Therefore, Benefield is entitled to summary judgment on Count 1.

The same is true with respect to Count 4. Goings argues that he was susceptible to attack because of his background and that various personnel at Menard (but not specifically Defendants) were aware of Sesson's violent tendencies. *See e.g. Sinn v. Lemmon*, 911 F.3d 412, 422 (7th Cir. 2018) (reversing summary judgment where officer was aware of general gang violence, a specific gang related attack on plaintiff, knew of repeat attacks on inmates like plaintiff, and was told by plaintiff that he was fearful and needed to be moved). There is no evidence to suggest that any of the defendants were aware that Sesson posed a threat to Goings before to the attack; there is no evidence they were either aware of Sesson's violent tendencies or that Goings was particularly vulnerable. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994) ("We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). Instead, the

evidence reveals that an investigation was conducted after Sesson attacked Goings and he was ultimately separated from Sesson.

Goings argues that Defendants received emails regarding potential and general dangers at the prison, but the only email in the record is one dated November 11, 2014 from Schoenbeck to other Defendants related to the November 5, 2014 incident. That email does not establish that any defendant was aware that Sesson posed a risk of harm to Goings before the attack. As far as the recipients of the email were aware, Schoenbeck investigated the incident and immediately separated Goings from Sessson. There is no evidence that any defendant was aware of any further specific threat to Goings' safety. Therefore, Defendants Butler, Lee, Hecht, Hof, Runge Carter, Phelps, Dillingham, Spiller, and Anthony are entitled to summary judgment on Count 4.

As to Schoenbeck, while there is a question of fact as to whether Goings was separated from Sesson on November 8, 2014 as Schoenbeck contends (Doc. 230-14), or a few days later, as Goings testified, it is undisputed that there were no additional attacks or altercations after November 8, 2014. Thus, Goings has no viable failure to protect claim against Schoenbeck and Schoenbeck is also entitled to summary judgment on Count 4.

**Count 3: Excessive Force and Unconstitutional Conditions of Confinement**

In this claim, Goings alleges that Benefield orchestrated the attack by Sesson. As previously noted however, there is no admissible evidence in the record connecting Benefield to Sesson or showing that Benefield orchestrated the attack on Goings. Benefield is therefore also entitled to summary judgment on this claim.

## Counts 5 and 6: Defamation[9]

Goings claims Benefield told other inmates and correctional officers that he is a snitch, stool-pigeon, and a rat and that these statements damaged his reputation among the prison population, caused him to miss out on a prison law clerk job, and damaged his reputation in the greater legal community. In his objection, Goings states certain facts, without citation to the record, and does not challenge Judge Daly's finding that he failed to plead special damages and has not shown any pecuniary loss as a result of the alleged defamation. *Tuite v. Corbitt*, 866 N.E.2d 114, 121 (Ill. 2006). Accordingly, this Court agrees with Judge Daly's conclusion; Benefield is entitled to judgment on this claim.

The Court reaches the same conclusion as to Count 6. Goings alleges that Benton and Stolworthy defamed him by written statements following the protective custody hearing. Again, Goings fails to show any damages that resulted from the allegedly defaming statements, and he does not specifically object to Judge Daly's findings and conclusions as to this Count. Therefore, Defendants Benton and Stolworthy are entitled to judgment on Count 6.

## Count 12: Deliberate Indifference to Medical Needs

In order to prevail on a deliberate indifference to serious medical needs claim, a plaintiff must first show that his condition was "objectively, sufficiently serious" and second, that the "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (citations and quotation marks omitted). Assuming Goings had an objectively serious medical condition, he must show that prison officials acted with a sufficiently

---

[9] Defendants argue that this Court lacks jurisdiction to consider Counts 5, 6, 16, and 17, which they argue are barred by sovereign immunity. Judge Daly did not address this argument, opting to address the claims on the merits. Defendants have not objected to this omission. In any event, the Seventh Circuit has held that it is "clear that a state employee's sovereign immunity defense does not impact a federal court's jurisdiction over a case." *Fields v Wharrie*, 672 F.3d 505, 518 (7th Cir. 2012).

culpable state of mind, namely, deliberate indifference. In other words, he must show that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. He does not have to prove that his complaints were "literally ignored," only that "the defendants' responses were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes,* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000) ). Negligence, gross negligence, or even recklessness as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823, F.2d 1068, 1072 (7th Cir. 1987).

To the extent Goings argues that Butler is liable because of her status as the chief administrator of the jail, this argument is without merit because there is no *respondeat superior* liability in § 1983 cases. *Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir, 2008). Goings further argues that Butler was aware of his medical needs because of the letter he sent after the attack. The actual letter is not a part of the record, but Goings described it in his deposition:

> I had wrote her at least a two-page letter asking her to assist me with the circumstance that I was going through and getting proper placement and ensuring that this type of incident never occurred, and in informing her of that, the officer had set me up, put me in that cell with full knowledge knowing that Mr. David Sessions threatened to kill his next cellmate.
> (Doc. 230-3, p. 12).

Based on Goings' own description, the letter would not have alerted Butler that there was an excessive risk to his health or that he was requesting medical assistance. Therefore, Butler is entitled to judgment on Count 12.

### Counts 16 and 17: Intentional Infliction of Emotional Distress

Goings alleges that by putting attack by Sesson in motion or allowing it to happen, Defendants inflicted severe emotional distress. Goings does not state any specific objection to Judge Daly's conclusion that the record does not support such a finding. Instead, he merely

rehashes the facts related to these claims and makes the same arguments that were already considered and rejected by Judge Daly, without indicating how he believes Judge Daly erred. In any event, in order to prevail on a claim of intentional infliction of emotional distress, Goings must demonstrate that the Defendants intentionally or recklessly engaged in "extreme and outrageous conduct" that resulted in severe emotional distress. *Somberger v. City of Knoxville, Ill.,*, 434 F.3d 1006, 1030 (7th Cir. 2006). The tort has three components: (1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress; and (3) the conduct must in fact cause severe emotional distress. *McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988). To be actionable, the defendants' conduct "must go beyond all bounds of decency and be considered intolerable in a civilized community." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *Kolegas v. Heftel Broad. Corp.*, 607 N.E.2d 201, 211 (Ill. 1992)); *Campbell v. A.C. Equip. Servs. Corp., Inc.*, 610 N.E.2d 745, 749 (Ill. App. Ct. 1993). Whether conduct is extreme and outrageous is judged on an objective standard, based on the facts of the particular case. *Honaker*, 256 F.3d at 490.

As this Court has found that no reasonable jury would conclude Defendants were deliberately indifferent to Goings' safety by allowing the attack by Sesson, there is no evidence that their conduct was outrageous or extreme. *See e.g. Dixon v. County of Cook*, 819 F.3d 343, 351 (7th Cir. 2016) ("The requirement of finding 'extreme and outrageous' conduct is a demanding one, and it will not be met in every instance where a plaintiff has stated a claim under the Eight Amendment (which itself sets a high bar)."). Moreover, there is no showing that they intended or should have known that their conduct would cause emotional distress. *Id.* ("Behavior that is otherwise rude, abrasive, or inconsiderate can be intentional infliction of emotional distress if the

plaintiff is particularly susceptible to emotional distress and the defendant is aware of plaintiff's susceptibility."). These Defendants are therefore entitled to summary judgment on these Counts.[10]

**Count 20: First Amendment retaliation Claim**

An inmate has a First Amendment right to file grievances and lawsuits. *Watkins v. Kasper*, 599 F.3d 791, 798 (7th Cir. 2010). "An act taken in retaliation for the exercise of a constitutionally protected right violates the Constitution." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To prevail on a retaliation claim, an inmate must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014) (citations omitted).

Goings wrote a grievance about Benefield interfering with access to legal property when he was transferred to Menard.[11] He claims that from that day on, Benefield engaged in a pattern of harassment: preventing access to property, being disrespectful, using profanity, spreading rumors about him being a snitch, and then ultimately orchestrating the transfer to the cell with Sesson.

The use of profanity, impolite speech, and threats would not deter a person of ordinary firmness from exercising his right to file grievances. *See Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the

---

[10] As set forth in the 28 U.S.C. § 1915A Screening Order (Doc. 11) and the March 27, 2017 Order (Doc. 79), Count 17 is only related to the initial placement of Goings in the cell with Sesson. The Count does not allege the infliction of emotional distress as to events that occurred after November 5, 2014.

[11] Defendants have not argued that the grievance was not protected First Amendment speech. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016) ("Grievances addressed to a government agency are, if intelligible, nonfrivolous, and nonmalicious, petitions for the redress of grievances within the meaning of the First Amendment and are therefore prima facie protected by the amendment."). As set forth in the Cumulative Counseling Summary, the grievance was denied because Goings' legal documents had not arrived at Menard when he accused Benefield of interfering with access to the same. As such, the grievance may have been considered frivolous and outside the ambit of the First Amendment.

right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise."). Further, there is no evidence that any inmate believed Goings was a snitch, such that any rumor would constitute a deprivation. *See Cobian v. McLaughlin,* 717 F. App'x 605, 610 (7th Cir. 2017) ("Although being branded a 'snitch' can pose a substantial risk of harm to inmates, an inmate's cooperation with authorities poses no risk unless fellow prisoners believe the prisoner is a snitch."). Nor is there evidence in the record that Benefield orchestrated Goings' transfer to the cell with Sesson. Indeed, it is undisputed that Goings continued to file grievances and lawsuits thereafter. Therefore, Benefield is entitled to summary judgment on Count 20.

### Unknown Defendants

Goings also named unknown parties in the operative Complaint. As of the date of this Order, Goings has neither identified those unknown parties or filed an amended complaint naming those parties (See Doc. 79). As such, pursuant to Federal Rule of Civil Procedure 41, they are dismissed with prejudice for failure to prosecute.

### Conclusion

For the foregoing reasons, Judge Daly's Report and Recommendation is **ADOPTED in its entirety.** Accordingly, Defendant Unknown party is **DISMISSED with prejudice** and Defendants' Motion for Summary Judgment (Doc. 229) is **GRANTED**. As there are no claims remaining, all pending motions are hereby **TERMINATED as moot** and all deadlines and hearing dates are **VACATED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

**DATED: August 16, 2019**

**STACI M. YANDLE**
**United States District Judge**